This is an appeal from a judgment of the district court of Grand Forks County, which affirmed an order of the county court of Grand Forks County approving and allowing the annual report and accounting of J.D. Gislason, guardian of the person and estate of Ingimar Gislason, an incompetent. Ingimar Gislason is *Page 733 
a beneficiary of the Veterans Administration, and a representative of that Administration appeared in the county court and filed objections to the allowance of two certain items which the guardian set forth in the annual report and accounting and asked authority to pay. Such items were: — (1) the sum of $60.00 for the guardian's fee or compensation for 1942 and a like amount for 1943; and (2) the sum of $60.00 to the Northwestern Trust Company for services rendered by it at the request of the guardian for the benefit of the estate. The report and accounting sets forth that the affairs of the estate and the condition of the ward made it necessary for the petitioner to obtain the services of said Northwestern Trust Company in conducting the affairs of the estate, and in advising and assisting with respect to investments, and in connection with reports and accountings. The objections to the report were leveled alone at these two items. The county court authorized the payments to be made. The Administrator of the Veterans Administration appealed to the district court of Grand Forks County from the order of the county court and demanded a trial anew in the district court. A trial was had in the district court at which witnesses appeared and testified. The district court affirmed the decision of the county court in all respects; and the Administrator of the Veterans Administration has appealed to this court from the decision of the district court.
The record on this appeal shows that the guardian, J.D. Gislason, is the brother of Ingimar Gislason, and was appointed guardian on February 14, 1930. At the time of the appointment, Ingimar Gislason was an inmate of the State Hospital for the Insane. The inventory and appraisement of the estate filed shortly after the appointment of the guardian shows that then the only assets of the estate consisted of certain personal estate of the value of $484.34. J.D. Gislason has continued to serve as guardian of the person and estate of Ingimar Gislason since his appointment in February, 1930. The annual report and accounting in question here is the thirteenth annual report and accounting rendered by him. Such annual report and accounting covers the period from Jauary 25, 1942 up to and including January 25, 1943. The report shows that the estate has assets conisting of approved securities, principally bonds of the United States, aggregating in all $6475.00. It also shows that income aggregating in all $1240.25 was *Page 734 
received during the year from payments by the Veterans Administration and interest on investments. It further shows that there was on hand at the beginning of the period covered by the accounting the sum of $536.76 in cash, which, together with the income received during the year, made total cash — (either on hand from the previous year, or received by the guardian during the year) — of $1777.01. It further shows that there was expended during the year for the support, care and maintenance, and other necessary expenditures for the incompetent, the sum of $1269.02, leaving a balance of cash in the hands of the guardian after payment of all such expenditures of the sum of $507.99.
The record on this appeal shows that the guardianship proceeding, from its inception, has been conducted by the same guardian and under the administration of the same judge. The county judge who entered the order overruling the objections made by the Veterans Administration, and approved the order and accounting, and authorized the payments to which the Veterans Administration objected, is the same judge who issued the letters of guardianship to J.D. Gislason in February, 1930. The record does not show when the incompetent was released from the Insane Asylum; but apparently he has not been an inmate of that institution or of any other institution for a long time, although it is conceded that he is mentally incompetent. According to the evidence the guardian made arrangements whereby the incompetent ward is furnished living quarters and board in the home of his mother, who is also the mother of the guardian. The evidence shows that the incompetent has peculiar vagaries and whims pertaining, for instance, to his food and his clothing. The record further shows that the guardian has given personal attention to the welfare of the incompetent and has sought to humor such whims and vagaries, and has personally endeavored to obtain the food and clothing that the ward desired. The evidence also shows that the guardian's wife has endeavored to look after the welfare of the ward and has rendered personal service in that behalf. The record bears ample evidence that the comfort and welfare and happiness of the ward has been sought by the guardian, and there is not the slightest indication in the record that there has been any disregard or failure to consider or to promote such welfare, or that there *Page 735 
has been any tendency to waste the substance of the incompetent's estate.
According to the record witnesses were heard before the county judge on the hearing had in the county court. The evidence thus produced has not been preserved and presented by the appellant as a part of the record on this appeal. Hence, of course, we have no means of knowing what that evidence was. In the order approving the annual report and accounting and authorizing the payments of the two items in question the court said: —
"The said Frank T. Hines, Administrator of Veterans' Affairs, by his said attorney, having filed written objections against the payment of any fees to the Guardian and any disbursements to the Northwestern Trust Company whereby such fees and disbursements exceed 5% of the annual income to this estate, and to any payment from the funds in this estate to the Northwestern Trust Company based upon the grounds of being an expense of the administration of the estate, and to no other matters covered by said report and petition, the Court proceeded to hear the testimony offered by and on behalf of the guardian, and the arguments of counsel, and it appearing to the court, after due consideration of the same, that the affairs of this estate are such, and the condition of said ward is such as to require extraordinary services to be rendered by said guardian, justifying a fee, in excess of that provided by law for ordinary services, and that the personal services rendered by the guardian to the person of the ward in connection with the guardianship of his person, were, during the year covered by said report, sufficient to justify the compensation of $60.00 requested by said guardian, and that in addition thereto, it was reasonably necessary for the said guardian, in order properly to husband, care for and invest the said estate, to employ expert assistance in connection with the said investments, and in connection with the reports and accountings, and that the services rendered him by the Northwestern Trust Company were of the reasonable value to said estate of the sum of $60.00."
The case was tried anew in the district court and evidence was adduced. The secretary of the Northwestern Trust Company was called and testified as a witness. He testified that the Northwestern Trust Company has been connected with the guardianship proceedings since *Page 736 
the beginning; that he is acquainted with the guardian and with the mother of the ward. He testified that the ward and his family were very much opposed to the ward being "institutionalized"; that the ward must be watched; that he has been very exacting in his requirements; that they waited on him and tried to humor him; that he (the witness) frequently has seen the guardian downtown shopping for the ward; that he would buy clothes, or other things that were necessary for the ward; that the guardian was not a person experienced in keeping books and accounts, or in making investments, and that from the beginning he had engaged the services of the Northwestern Trust Company for such purposes; that the accounts and securities were kept by the Trust Company in its vaults; that the guardian would come and consult with them from time to time, not only with respect to investments, but with respect to the purchase of articles requested by the ward and matters of that nature.
The trial court filed a memorandum decision wherein, after quoting the portion of the order of the county judge set out above, it was said: —
"Judge Lebacken (the county judge) is on the ground. He has had this estate before him for several years. He knows its growth and solvency. He knows better than I the value of the care, service, and attention that are given and rendered to both the ward and his estate. With all that knowledge of the situation before him, he made the above finding. I cannot see my way clear to disturb the same."
Thereafter the district court made and filed formal findings of fact wherein it was said: —
"The affairs of this estate are such, and the condition of said ward is such as to require extraordinary services to be rendered by said guardian, justifying a fee in excess of that provided by law for ordinary services, that the personal services rendered by the guardian to the person of the ward in connection with the guardianship of his person, were, during the year covered by said report, sufficient to justify the compensation of sixty dollars requested by said guardian, and that in addition thereto, it was reasonably necessary for the said guardian, in order properly to husband, care for and invest the said estate, to employ expert assistance in connection with the said investments, and in *Page 737 
connection with the reports and accountings, and that the services rendered him by the Northwestern Trust Company were of the reasonable value to said estate of the sum of sixty dollars."
The laws of this state provide: —
"The compensation payable to guardians under the provisions of this chapter shall not exceed five percent of the income of the ward during any year. If extraordinary services are rendered by such guardian, the county court, upon petition and after a hearing thereon, may authorize additional compensation therefor payable from the estate of the ward." ND Rev Code 1943, § 30-2313; Sess Laws 1931, c 309, § 11.
Appellant contends that this statute limits expenditures that may be made from the ward's estate for compensation to the guardian for services in any one year to five percent of the income of the ward during such year, unless extraordinary services are performed; and that payment may not be made out of the ward's estate for extraordinary services in excess of the percentage of the annual income fixed by the statute, unless authority is granted by the court pursuant to notice and after hearing; and that in such case the petition must specify the services to be rendered and the amount to be paid therefor so as to afford the interested parties an opportunity to be heard on all pertinent questions relating to the expenditures. Appellant further contends that in this case no extraordinary services were performed by the guardian, and that the services performed by the Northwestern Trust Company were merely ordinary services such as the guardian was required to perform himself as part of his duties in the management of the estate, and, consequently, under the statute no expenditures could be made out of the ward's estate to compensate for the services performed by the guardian and by the Trust Company, in excess of five percent of the annual income.
As has been said, here the annual income of the estate of the ward for the year in question amounted to $1240.25. The two items in question aggregate $120.00. The statute invoked by the appellant limits the compensation to the guardian to a sum of not to exceed five percent of the income of the ward during any year, but authorizes the court to allow additional compensation in excess of that sum for extraordinary services. It is a general rule that prior authorization by the court is *Page 738 
not necessary in order to entitle a guardian to be compensated for funds which he has expended or for obligations which he has assumed for services performed or goods furnished by others at his request for the benefit of the ward in the proper and necessary management of the estate. 39 CJS p. 155; Woerner, American Law of Guardianship, p. 515; 25 Am Jur 46, 47, Guardian and Ward, § 71.
Of course, where the guardian incurs liability or expends moneys without a previous order of the court authorizing the expenditures to be made from the estate he faces the hazard that the court may not authorize the expenditure to be charged in the account upon the assets of the estate. 39 CJS p. 156. The statute involved here does not depart from such general rule. It makes no provision that the guardian must obtain the approval of the court in advance of making expenditures or incurring liability for appropriate purposes incident to the proper conduct of the affairs of the ward. The restriction upon expenditure merely relates to the amount of compensation to be paid to a guardian for ordinary services. It does not fix a definite limit on expenditures that may be made for other purposes. It does not forbid the guardian to employ someone to assist him, where that becomes necessary in the management of the estate, or in the care and maintenance of the ward (25 Am Jur 62, Guardian and Ward, § 96; 39 CJS p. 159, § 91); nor does it fix any definite limit upon the amount of additional compensation that may be charged to, and paid out of the assets of, the estate for extraordinary services whether performed by the guardian himself, or by others employed by him. That is a matter left to be determined by the court as the facts may warrant in each particular case. Wade's Estate,343 Pa. 520, 23 A.2d 493. The statute does not require as a condition precedent to the allowance of additional compensation for extraordinary services that the guardian must procure authority to perform the services before the services are performed. The statute does not provide or imply that the guardian who performs extraordinary services or employs others to furnish proper and necessary service for the benefit of the ward without prior authorization of the court shall be denied compensation or reimbursement because there was no previous authorization. It does not deprive the court of authority to approve what the guardian has done, or of authority to allow payment for services that *Page 739 
have been rendered, where the court would have been authorized to approve the services and payment therefor out of the estate, if application had been made to the court before the services were rendered.
In this case no payment has been made by the guardian either for his own services or for the services which the Northwestern Trust Company rendered at his request. In his report and accounting he asks for authority to make payment. He listed the items in his annual report and accounting — recognizing that approval by the coure was necessary before the expenditure might be made out of the ward's estate. The guardian did not attempt to pay himself at all without specific authority from the court, nor did he attempt to make payment to the Northwestern Trust Company for the services which it had rendered at his request until he was authorized by the court to make such payment.
The matter of additional compensation, that is, the question whether the guardian should be allowed to charge the estate with $60.00 for his services and with $60.00 for the services which the Northwestern Trust Company had performed at his request, was duly submitted to the county court upon the merits. The claims were listed and authority to make payment out of the assets of the estate requested in the annual report and accounting. Due notice of the report and of the hearing thereof was given as required by law. The appellant appeared at the hearing and filed objections to the merits of the claims. He was afforded full hearing on the merits in the county court; he appealed from the decision of the county court and asked for and was afforded a trial on the merits in the district court; and he has appealed from the decision of the district court and demanded a trial anew in this court. It seems indeed that the appellant has been afforded his full day in court.
It seems to be the contention of the appellant that when the legislature spoke of "extraordinary services" it meant services of an anomalous and wholly unusual character — services which would arise only in case of some unforeseen emergency or contingency. We think that when the lawmakers spoke of "extraordinary services" they used the term in contradistinction to "ordinary services;" that is, they had in mind services other and in addition to such "usual, customary, regular, or ordinary" services (Webster's New International Dictionary, 2d ed; Walker v. State, 12 S.C. 200, 280) as a guardian would naturally be *Page 740 
required to render in any or in every case; and they intended to authorize the court to allow additional compensation when services were rendered in addition to the usual, customary, regular, or ordinary services in any case, where the court found such services to be of such character and of such benefit to the ward or his estate as in the judgment of the court authorized or required that additional compensation be made therefor.
The guardianship was not intended wholly or even primarily for the management of property. The estate was and is a means to an end and not an end in itself. The end to be accomplished was the welfare, the comfort and happiness of the ward. In the very nature of things the county court has wide discretionary powers in such cases. Under the Constitution such court has exclusive, original jurisdiction in the appointment of a guardian and in the settlement of his accounts. ND Const § 111. In naming a guardian the court is not concerned wholly or even primarily with the business acumen and skill of the guardian. There is no ready-made pattern. A person who may be the best qualified to serve as a guardian in one case may be much less qualified in another. The guardianship of the person and estate of an incompetent like the one with which we are dealing here presents not merely questions of handling assets and conduct of business affairs. Much more does it present questions relating to the safety, comfort, happiness and welfare of the ward. The most adept business or financial expert might not be able to render the many small services tending to prevent waste of the assets and to promote the comfort and happiness of the ward which another person with much less business skill or ability might be able to render. In the very nature of things the county court must exercise discretion in determining whether in any given case certain services are ordinary or extraordinary, as well as whether in the circumstances of the case it was or is necessary or desirable for the guardian in the performance of his duties to obtain the assistance of others (25 Am Jur 62, Guardian and Ward, § 96; 39 CJS p. 159, § 91), and the amount properly chargeable to the estate for such services by others, or for extraordinary services performed by the guardian himself. In re Wade's Estate, supra. The guardian here is not a man of large affairs. He is a carpenter. The record, however, leaves no room for doubt that the affairs of the estate have been well conducted *Page 741 
and that the guardian has been devoted to the welfare of the ward, his brother. Under the arrangement which the guardian made with the Trust Company, he has been afforded the benefit of the advice of the chief active executive officer of the Company with respect to investments and the conduct of the affairs of the estate. The Trust Company has also kept and been responsible for the safety of the securities and accounts of the estate. The entire compensation which the guardian seeks to charge to the estate is $10.00 per month. This is for all the services, both ordinary and extraordinary, rendered not only by himself but those rendered by his wife and by the Trust Company. According to the showing made on this appeal the arrangement which now prevails between the guardian and the Trust Company has existed from the very beginning and the same allowance has been authorized by the court on each of the former annual accountings in the former years as was claimed and allowed here. In former years no objection was made to such allowance by the Veterans Administration. While this fact is not of controlling importance, it is indicative that those in charge during those years must have felt that there was a reasonable basis for the allowances that were made. Certainly the services which were rendered by the guardian in shopping for the ward and in catering to his peculiar whims as to food and clothing are not the ordinary or usual services performed by a guardian in every case, nor is the care which was taken by the guardian in engaging the services of a trust company concerning investments and the custody of the securities and records services which a guardian would ordinarily and usually perform in every case. Larger compensation has been allowed for extraordinary services under identical statutory provisions where the estate was smaller than the estate involved here and where the guardian in addition to the statutory compensation for ordinary services was also allowed a substantial sum ($70.00 per month) for the care, maintenance, and support of the incompetent ward. See Hines v. McKenzie, 216 Iowa 1388, 230 NW 687. We find no reason for disturbing the decision appealed from. In our view the decision of the county court, which in turn was affirmed by the district court, is eminently just. It evidences careful and painstaking consideration of every aspect of the case. Judgment affirmed.
MORRIS, BURKE, NUESSLE and BURR, JJ., concur. *Page 742